UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

BETH PALESE,

      Plaintiff

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,
      Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff BETH PALESE (hereinafter "Plaintiff" or "Palese") hereby sues the Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "Defendant" or "CCL") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.      This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorneys' fees.

2.      **THE PLAINTIFF.** The Plaintiff BETH PALESE (hereinafter "PALESE") is *sui juris* and is a citizen and resident of Cumberland County, Camp Hill, Pennsylvania, for purposes of diversity.

3.      **THE DEFENDANT.** The Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as "CCL" or "Defendant") is a citizen of the foreign nation of Panama, is incorporated outside of the state of Florida in the country of Panama, but does business in the State of Florida, and at all times material hereto was and is doing business

1

in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.

5. **VENUE AND PERSONAL JURISDICTION.** This action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF THE INCIDENT.** The incident occurred on June 21, 2022.

8. **LOCATION OF THE INCIDENT.** The incident occurred onboard the vessel the *Carnival Legend*, a ship in navigable water, while the Plaintiff was a passenger. Accordingly,

the Plaintiff's claims are governed by general maritime law.  Specifically, the Plaintiff's incident occurred at the ladies' public bathroom threshold by the Serenity pool on Deck 9.

9.      **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     **THE INCIDENT.**  Under the General Maritime Law, CCL owes to its passengers, including the Plaintiff herein, a duty of reasonable care under the circumstances. The circumstances here are that because CCL approved and allowed an unreasonably high threshold in the public ladies' room doorway and failed to adequately warn passengers, PALESE tripped, fell and was severely injured.  On June 21, 2022, PALESE went to the public bathroom in the SERENITY area.  To exit the bathroom, passengers must raise their arms to reach for the door handle and pull the door towards themselves to open the door.  Before doing so, there is no warning or indication to alert guests as to the presence of a raised and unusually enlarged, irregular threshold.  Furthermore, the experience of exiting is far different from the entry experience of this doorway.  While CCL did choose to put down black and yellow tape, CCL failed to put down this tape in a manner that would indicate and/or delineate the extra lip/edge in the exit path of travel.  When PALESE went to leave the subject bathroom, she tripped over the unreasonably high threshold and fell forward, striking her head on the clean towel station counter located outside of the bathroom. After hitting her head, PALESE landed on her arm, fracturing her wrist.

11.     This threshold fails to comply with codes and industry standards for threshold heights. This threshold is too tall and too abrupt.  This threshold also fails to comply with accessibility requirements.  CCL does not provide adequate lighting in the subject area, which prevents passengers from seeing and appreciating this dangerous condition.  As indicated above, passengers are required to negotiate this confusing threshold that creates an optical illusion while simultaneously pulling and controlling the door to exit, which creates an unnecessary and dangerous tripping hazard.  CCL knew

or should have known to use a ramp for guests to safely exit and enter the bathroom as it did for the sliding glass door seen immediately outside this bathroom area.

12.     As a result of CCL's negligence, PALESE has suffered serious, debilitating, and permanent injuries, including but not limited to a right distal radius fracture, benign paroxysmal positional vertigo, cervicalgia, anxiety, and headaches. PALESE also received instructions on concussion protocol from CCL medical staff as a result of the head injury she sustained.  PALESE suffered and will continue to suffer severe, debilitating, and permanent injuries

13.     **CARNIVAL LEGEND.** CCL owns and/or operates the *Carnival Legend*. The *Carnival Legend* was first put into service in December of 2002.  CCL has operated and maintained the ship continuously since 2002.

14.     CCL participated in, created, approved, or controlled or had the right to control the design of the structures as well as the selection of all materials on board the *Carnival Legend*. CCL custom built the *Carnival Legend* cruise ship in a shipyard in Finland. The *Carnival Legend* is a cruise ship that CCL had custom built to specifications and designs which were made by or under the supervision and participation of CCL. The *Carnival Legend* was designed by or at the direction of CCL's shoreside New Build and other shoreside departments.  CCL employs architects, designers, and engineers.  Under the contract with the shipyard, CCL has not only full access to the ship to inspect and the ability to inspect the designs used for construction but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter.  That includes the raised threshold which caused this fall and these injuries.  CCL holds the ultimate control under their contract with the yard. If an item or design is rejected or at issue and not resolved, CCL can withhold payment.  CCL has owned, operated and maintained the *Carnival Legend* continuously since the time when this ship was first built and put into service.

15.     After ships are delivered to the cruise line, the cruise line operates and has full control over the ship.  Because of this control, the cruise line is able to make changes to any

structural aspect of the ship and to the finishes, lighting, signage, and flooring, including but not limited to changing thresholds. CCL is able to change the height and width of thresholds, install warning signs and/or utilize methods to make the height and/or width of thresholds immediately apparent to passengers.  CCL's shoreside personnel also create, participate and/or approve changes and modifications to the design, construction and selection of materials when CCL refits or modifies its ships, including its shipboard unreasonably elevated thresholds.  These changes are made by the cruise line in drydock, in wet dock, when the ship is at dock during a cruise, and when the ship is underway.  Any of these changes can be made by the cruise line using the contractors at a shipyard, using contractors who come dockside while the ship is in service, using the cruise ship's permanent crew, which includes maintenance, joiners (carpenters), electricians, and others, and using riding crews which are contractors brought onto the ship specifically for a certain construction or renovation project.  As such, CCL maintained the ultimate control over the design and construction of CCL's fleet, including the *Carnival Legend*.

16.     The *Carnival Legend* is a part of the *Spirit*-Class, which also includes the *Carnival Pride, Carnival Spirit,* and *Carnival Miracle*. CCL also custom built to specifications and designs which were made by or under the supervision and participation of CCL all of the *Spirit*-class ships listed above. The design and construction of these ships was under the supervision and with the participation of CCL personnel who were stationed onsite in the shipyard during construction**.**

17.     The *Carnival Legend* has a capacity of 2,610 passengers and 930 crew members. CCL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds.  One of these areas on board the *Carnival Legend* is the Lido Deck, located on deck 9.  The Lido Deck features attractions like the SERENITY, the Camelot Forward Pool, the Avalon Main Pool, the BlueIguana Tequila Bar, the RedFrog Rum Bar, a fitness center, a spa, the Unicorn Café, and other buffet restaurants and bars.  CCL knows that deck 9 is an extremely high traffic area and that many passengers visit the area at least once per day.

18.    **THE DANGEROUS CONDITION.** The *Carnival Legend*'s Lido Deck is a busy and highly trafficked area.  CCL provides public bathrooms on the Lido Deck for the passengers to use.  CCL knew or should have known to make sure there were no tripping hazards to passengers walking through the doorway of these bathrooms. There is a hazardous threshold in the doorway to the ladies' public bathroom by the SERENITY area.  The unreasonably high threshold in this doorway presents a tripping hazard to passengers exiting this bathroom.  CCL knew or should have known the design, construction and selection of materials of its shipboard thresholds, including but not limited to the threshold in the doorway of this public bathroom, was unreasonably dangerous. CCL knew the unreasonably high threshold was in the bathroom doorway. CCL participated in the design, construction, and/or approval process of this dangerous threshold. CCL knew or should have known that this threshold violates international and/or industry safety and design standards and/or that it is a tripping hazard for passengers.  This is an ongoing, continuous problem of which CCL is well-aware.

19.    CCL knows that despite a passenger's use of reasonable care, the presence of unreasonably elevated thresholds may not be open and obvious to passengers.  CCL expects that passengers reasonably rely on CCL to inspect, maintain and make its thresholds safe for passenger use.  Yet CCL failed to inspect, maintain and/or repair its thresholds with sufficient regularity, failed to block off the area, failed to provide adequate lighting and/or failed to warn with sufficient signage, visual cues and/or verbal warnings.

20.    CCL's black and yellow striping added to the bathroom threshold creates an optical illusion that makes the height and width of the threshold undetectable and/or not readily apparent. Further, the striping selected and utilized by CCL is not effective when the door at the subject threshold is closed. CCL also knew or should have known that most people acting reasonably look straight ahead when opening a door into a public space and into close quarters to ensure that you, the person opening the door, can push the door open and in order to ensure that you, the person

6

opening the door, will not hit anyone on the other side of the door.  And CCL knew or should have known that the person using a door in a public space in close quarters usually looks at the door itself at eye level in order to open or close the door.  For that reason, the only effective sign advising of the existence of this raised threshold would have been at eye level on that door and on the walls leading to that door.  Yet, CCL chose not to post any such signs.

21.     Even though CCL knows that its bathroom thresholds are high traffic areas, CCL chose these unreasonably elevated and/or wide thresholds, which were undetectable to passengers. CCL failed to post warning signs or provide any other notice to passengers of the presence of unreasonably elevated thresholds and/or wide thresholds, which can cause passengers to trip and fall.  CCL failed to provide adequate lighting or visual cues to alert passengers of these conditions. CCL's thresholds were not open and obvious to CCL's passengers, including the Plaintiff.

22.     CCL knew or should have known that the threshold in this bathroom's doorway created a dangerous condition for the passengers. CCL knew or should have known that this threshold created a tripping hazard for passengers walking in this high traffic area. CCL knew or should have known that this dangerous condition may cause passengers to trip, fall, and be injured.

23.     The Defendant had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

24.     CCL negligently failed to follow industry standards. CCL failed to train/and or supervise crew members. CCL negligently selected materials and a design that created a hazardous condition. CCL negligently failed to warn passengers of this dangerous condition.

25.      As a result of CCL's negligence, PALESE did trip, fall, and was injured. Due to CCL's negligence, PALESE suffered severe, debilitating, and permanent injuries.

26.     **<u>NOTICE:  KNOWN REPETITIVE CONDITION.</u>** CCL is in the hospitality business.  As such, CCL provides public bathrooms for the comfort of its passengers throughout the ship. The only way for passengers to get in or out of CCL's bathrooms is to cross the

unreasonably elevated and/or wide doorway thresholds. CCL knows that passengers will move throughout CCL's common areas, including its public bathrooms, on a repetitive basis throughout the duration of each CCL cruise. Therefore, CCL knew or should have known to make sure there are no tripping hazards in the line of passenger travel. Despite this knowledge, CCL has chosen to install unreasonably elevated thresholds on all its ships for years. CCL knows from years of experience that these unreasonably elevated thresholds can cause passengers and crew members to trip and fall, catch their feet and/or lose balance. CCL knows that passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board CCL's cruise ships. For these reasons, CCL knows it is extremely important to inspect, maintain, provide reasonably safe thresholds on its ships, and warn passengers of these dangerous conditions.

27.     CCL knew or should have known that it must protect pedestrian traffic by inspecting and maintaining its thresholds in a safe condition, correcting its thresholds such that they comply with industry standards and/or otherwise made safe, and/or adequately warning passengers of the danger created by CCL's thresholds. CCL also knew or should have known that it must block off thresholds that lack adequate warnings to alert passengers of the dangerous nature of the threshold. CCL knew or should have known that passengers must be warned of thresholds that are unreasonably elevated and/or thresholds that violate or do not comply with codes, rules, regulations and/or industry standards. Because CCL was aware that its thresholds experience significant foot traffic, CCL knows that its employees must take adequate safety measures to identify, mark, and provide adequate lighting and/or warnings to make the dangerousness of thresholds apparent to passengers.

28.     **<u>NOTICE:  ADDED YELLOW AND BLACK STRIPES.</u>** CCL added yellow and black stripes to one side of the threshold of the public bathroom.  CCL added the yellow and black stripes because they knew that the subject threshold was a tripping hazard.  CCL applied the yellow

and black stripes to the threshold a long time before this incident. CCL knows that passengers are not familiar with these thresholds found on their ships. CCL knew this threshold was a deceiving and dangerous condition for passengers. CCL knew that the bathroom threshold was a tripping hazard and that this threshold had been a tripping hazard for an extended period of time. Despite this knowledge, CCL only applied yellow and black stripes to one side of the threshold. CCL failed to apply yellow and black stripes in a manner that allowed the yellow and black stripes to be seen from inside the bathroom. CCL knew or should have known that exiting the bathroom is a more dangerous experience, as the passenger is forced to pull the door open while navigating the unreasonably high threshold. CCL failed to place yellow and black stripes on the threshold that would alert passengers of this dangerous condition as they exited the bathroom. Because CCL failed to place yellow and black stripes on both sides of the doorway, there was no warning or indication that alerted passengers as to the presence of the raised and unusually enlarged, irregular threshold as they exited this public bathroom.  CCL knew or should have known that the yellow and black stripes placed only on one side of the doorway and not visible to those exiting the bathroom were inadequate.

29.     **NOTICE:  TRAINING AND PROCEDURES DIRECTING CREW ON HOW TO INSPECT, MAINTAIN, AND WARN PASSENGERS ABOUT HAZARDS IN THE AREA.**  CCL trains its shipboard crewmembers to warn passengers of the dangerous conditions on board the *Carnival Legend,* conditions including the unreasonably high threshold in the doorway of the public bathroom on the Lido Deck, which may cause passengers to trip and fall. CCL knows that passengers will move throughout CCL's common areas, including its public bathrooms, on a repetitive basis throughout the duration of each CCL cruise. Therefore, CCL knew or should have known to make sure there are no tripping hazards in the line of passenger travel. Despite this knowledge, CCL has chosen to install unreasonably elevated thresholds on all its ships for years.  CCL knows from years of experience that these unreasonably elevated thresholds can

cause passengers and crew members to trip and fall, catch their feet and/or lose balance. CCL knows that passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board CCL's cruise ships. CCL knows the importance of alerting passengers to hazards they don't normally find on land resorts, such as the dangerous and unreasonably high doorway thresholds. CCL knew or should have known that without verbal, written and/or visual warnings, passengers may not be able to appreciate the presence, height and/or width of CCL's thresholds.

30.    CCL trains its crew and creates its own procedures for its crew on how to inspect and maintain its thresholds and how to warn passengers of CCL's threshold's unusual height and weight.    CCL's training materials and/or procedures include photographs with visual demonstrations on how to properly inspect, maintain, and/or warn passengers about dangerous thresholds which can cause a trip and fall incident.

31.    **NOTICE: CAUTION SIGNS.**   Additionally, CCL knew or should have known about the dangerous condition because CCL posts caution signs on other high thresholds. *Elizabeth Amy v. Carnival Corp.*, 961 F.3d 1303 (11th Cir. June 16, 2020); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) (holding that the "presence of warning cones" near an alleged slip and fall is evidence from which "a reasonable jury could ... infer that [the defendant] was on notice of the potentially hazardous condition."); *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (holding that evidence that Carnival sometimes posted signs on a specific pool deck door that read "caution, strong winds" created "a genuine issue of fact" as to whether Carnival had actual or constructive notice of the hazardous condition); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015) (concluding that a cruise ship operator had notice that the ship's pool deck could be slippery after rain from evidence that crew members sometimes posted warning signs on the pool deck after rain.)

32. **NOTICE:   VIOLATION OF INDUSTRY STANDARDS.** Industry standards can establish notice of a dangerous condition. *Sorrels v. NCL*, 796 F.3d 1275, 1282 (11th Cir. 2015). CCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") CCL's thresholds in the bathroom walkways are escape routes that CCL knew or should have known it must maintain safely and clearly with adequate markings and/or lighting. CCL, at all times relevant, created its own internal standards, policies and procedures for a safe and/or clear walkway. The threshold in the doorway of the bathroom fails to comply with the following industry standards: ASTM F-1637 Subsection 5.1 Standard Practice for Safe Walking Surfaces (5.1.1 and 5.1.2); SOLAS Chapter II-2, Part D, Regulation 13-Means of Escape Subsection 1.2("escape routes shall be maintained in a safe condition clear of obstacles.") and subsection 7.1.5 ("escape routes shall not be obstructed by furniture or other obstructions"); MSC Circular 735 ("Recommendation on the Design and Operation of Passenger ships to Respond to elderly and Disabled Persons' Needs"); IACS Recommendation No. 132-2013 Human Element Recommendations Subsection 4.6.4 ("Ergonomic Structure Arrangement for walkways'); and ADA Accessibility Guidelines and Standards: §404.2.2 Maneuvering Clearances, §404.2.5 Thresholds, and §303 Changes in level. CCL knew or should have known it must provide safe means to enter and exit bathrooms and eliminate hazards in the area that make the walkway unsafe such as unreasonably elevated thresholds or walkways. Upon information and belief, CCL at all relevant times knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways and/or floor materials.

33.     CCL knew or should have known that abrupt changes in the level of a walking surface should be no more than ½ of an inch. See, ASTM 1637. Sudden changes in the level of a walking surface greater than ½ of an inch are dangerous trip hazards and would require the installation of a ramp or a stair (or would require some other means to make the walking surface flush). The abrupt change in level presented by the protruding threshold substantially exceeded ½ of an inch and were thus dangerous and capable of causing passengers, like PALESE, to trip and fall.

34.     **NOTICE: CCL'S IMPORTANT INFORMATION TO KNOW BEFORE YOU GO.** CCL created a page on their website that is titled "Important Information to Know Before You Go." As a part of this important information, CCL warns passengers of some of the potential hazards to their personal safety on its ships. One of the hazards identified by CCL are thresholds. Therefore, CCL knew or should have known that its shipboard thresholds are dangerous and can cause passengers to trip, fall and get injured.

**Personal Safety**
Although everyone's safety is our number one concern, all guests should take responsibility for their own personal safety. You're on a moving ship, so please hold on to handrails when possible and be conscious of high thresholds when walking around. When out on deck, be mindful of wet surfaces (especially by the pool area), always wear shoes/sandals and dry-off before enjoying any of our outdoor sports equipment.

This information has been located at https://www.carnival.com/safety-information.aspx.

35.     **NOTICE:  DOCUMENTED PRIOR INCIDENTS.**  CCL knew or should have known about the dangerous condition that doorway thresholds create because of prior similar incidents. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiarol* was not required to show that another passenger slipped on the same step while in the same theater of the

same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

a. Former passenger James Chatman was injured while on board the *Carnival Splendor* on August 29, 2016, when he tripped and fell on an unreasonably elevated and difficult to visualize threshold at the entrance to a public bathroom on the Lido deck. Chatman suffered injuries as a result and filed a lawsuit against CCL. *James Chatman v. Carnival Corporation*, Case No. 1:17-cv-23939. CCL also owns and operates the *Carnival Splendor.*

b. Former passenger Philip Schuman was injured on November 20, 2013 while on board the *Carnival Freedom* when he tripped on a door threshold while exiting the men's public bathroom on the Lido Deck on deck 9. CCL also owns and operates the *Carnival Freedom.*

c. Former passenger Rhonda Dietrich was injured on November 24, 2018, when she tripped and fell on an unreasonably elevated threshold in the doorway of a bathroom on board the *Carnival Elation.* Dietrich suffered injuries as a result and filed a lawsuit against CCL. *Rhonda Dietrich v. Carnival Corporation*, Case No. 1:19-cv-24774. CCL also owns and operates the *Carnival Elation*.

d. Former passenger Patricia Gray was injured on April 4, 2015, when she tripped and fell on the unreasonably elevated threshold in the doorway of a bathroom on board the *Carnival Paradise*. Gray suffered injuries as a result and filed a lawsuit against CCL. *Patricia Gray v. Carnival Corporation*, Case No. 1:15-cv-21461-JAL. CCL also owns and operates the *Carnival Paradise*.

e. Former passenger Janice Lane was injured on board the *Carnival Ecstasy* on April 5, 2016, when she tripped and fell on the unreasonably high threshold of a bathroom door. CCL also owns and operates the *Carnival Ecstasy.* Lane suffered injuries as a result and filed a lawsuit against CCL. *Janice Lane v. Carnival Corporation*, Case No. 1:17-cv-20819. CCL also owns and operates the *Carnival Ecstasy.*

f. Former passenger Paulette Howard-Bunch was injured on July 24, 2017, while on board the *Carnival Glory* when she tripped and fell on a threshold on Deck 11. Howard-Bunch suffered injuries as a result and filed a lawsuit against CCL. *Paulette Howard-Bunch v. Carnival Corporation*, Case No. 1:18-cv-21867-KMM. CCL also owns and operates the *Carnival Glory.*

g. Former passenger Doreen Caesar-Bishop was injured on February 4, 2019, while on board the *Carnival Triumph* when she tripped and fell on an unreasonably dangerous metal threshold on Deck 5. Ceasar-Bishop suffered injuries as a result and filed a lawsuit against CCL. *Doreen Caesar-Bishop v.*

*Carnival Corporation*, Case No. 1:21-cv-20117. CCL also owns and operates the *Carnival Triumph*.

h. Former passenger Joy Kraft was injured on May 6, 2017,  while on board the *Carnival Inspiration* when she was tripped and fell on a dangerous threshold. Kraft suffered injuries as a result and filed a lawsuit against CCL. *Joy Kraft v. Carnival Corporation*, Case No. 1:17-cv-24044. CCL also owns and operates the *Carnival Inspiration*.

i. Former passenger Carol Smith was injured on February 15, 2020, while on board the *Carnival Paradise* when she tripped and fell on an unreasonably high threshold on the Lido Deck. Smith suffered injuries as a result and filed a lawsuit against CCL. *Carol Smith v. Carnival Corporation*, Case No. 1:21-cv-20098-CMA CCL also owns and operates the *Carnival Paradise*.

j. Former passenger Claudine Nepost was injured while on board the *Carnival Triumph* on October 19, 2017, when she tripped and fell on the threshold on the Lido Deck. Nepost suffered injuries as a result and filed a lawsuit against CCL. *Claudine Nepost v. Carnival Corporation*, Case No. 1:18-cv-24966-KMW. CCL also owns and operates the *Carnival Triumph.*

k. Former passenger Debora Hutchinson was injured while on board the *Carnival Freedom* on July 22, 2017, when she tripped and fell on the threshold on the Lido Deck. Hutchinson suffered injuries as a result and filed a lawsuit against CCL. *Debora Hutchinson v. Carnival Corporation*, Case No. 1:18-cv-22117-DPG. CCL also owns and operates the *Carnival Freedom.*

l. Former passenger Bonita Dupus was injured while on board the *Carnival Freedom* on September 10, 2019, when she tripped and fell on the threshold on the Lido Deck. Dupus suffered injuries as a result and filed a lawsuit against CCL. *Bonita Dupus v. Carnival Corporation*, Case No. 1:20-cv-23378. CCL also owns and operates the *Carnival Freedom.*

m. Former passenger Teresita Rosa Marceca was injured while on board the *Carnival Ecstasy* on May 18, 2015, when she tripped and fell on the threshold on the Lido Deck. Marceca suffered injuries as a result and filed a lawsuit against CCL. *Teresita Rosa Marceca v. Carnival Corporation*, Case No. 1:15-cv-22385-JLK. CCL also owns and operates the *Carnival Ecstasy.*

n. Former Passenger Vicki Bush was a passenger on board the *Carnival Conquest* on February 22, 2016, when she tripped and fell over a raised doorway threshold and was injured. *Vicki Bush v. Carnival Corporation*, Case No. 1:16-cv-25341-CMA. CCL also owns and operates the *Carnival Conquest.*

14

As for additional incidents that may be in the custody of the Defendant, one of the passengers who assisted PALESE after her fall informed the Plaintiff and her family that his daughter had also tripped and fallen on the subject threshold prior to the Plaintiff's incident. After the Plaintiff's fall, PALESE's husband went to the subject threshold with CCL security. At this time, he and the CCL security officer witnessed another woman trip and fall on the dangerous subject threshold.

36.     Therefore, the cruise line had a long-standing dangerous condition on its ship, had actual and constructive notice of that long-standing dangerous condition, and had the ability to make changes to rectify this condition.  Those changes include but are not limited to changing the height and/or width of the threshold, changing the lighting, providing adequate markings and/or visual cues to alert passengers of the presence, height and width of CCL's thresholds, providing more crew members to inspect, maintain and keep thresholds in a safe condition and/or provide warnings to passengers, and/or control passenger and crew member foot traffic.

37.     Yet on June 21, 2022, CCL provided an unreasonably unsafe threshold in the public bathroom which caused passenger PALESE to trip and fall. As a result of CCL's negligence PALESE has suffered severe and permanent injuries, including but not limited to a concussion, benign paroxysmal positional vertigo, cervicalgia, anxiety, headaches, and a right distal radius fracture.  These injuries have caused and will continue to cause severe disability with permanent impairment.

## COUNT I:
## NEGLIGENT FAILURE TO WARN

38.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1- 37.

39.     This Count is an action for negligence for CCL failing to warn passengers, including the Plaintiff, of the unreasonable height and/or width of its bathroom threshold which is not readily apparent.

40.     **DUTIES OWED BY CARNIVAL:** Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

41.     CCL owes a duty as a common carrier to its passengers to warn of dangers known to CCL where CCL invites or reasonably expects passengers to go.  CCL owes a duty of reasonable care under the circumstances.   The circumstances are as follows. CCL provides passenger bathrooms, including public bathrooms in common areas. CCL expects that passengers, including the Plaintiff, will continuously and repetitively use and walk over CCL's bathroom thresholds to access these bathrooms. CCL's bathrooms have unreasonably elevated and/or wide thresholds, which passengers must cross to use and/or access CCL's bathrooms. CCL knows that passengers may not know and/or be able to detect or appreciate the height or width of these bathroom thresholds. CCL knows that passengers are unfamiliar with these raised thresholds. Therefore, CCL owes a duty to warn the Plaintiff and other passengers of this dangerous threshold. CCL should have provided adequate warnings and/or visual cues to alert passengers as to the height and width of these thresholds so that passengers could safely walk into and/or from CCL's bathrooms.

42.     CCL knew or should have known that its bathroom thresholds can cause passengers to trip and fall.  CCL knew or should have known that the height and width of its thresholds are

not readily apparent to its passengers. Therefore, CCL knew or should have known to warn its passengers not only of the presence of thresholds but also to warn them as to the height and width of the thresholds.

43.     CCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations, industry safety standards, codes, rules and/or regulations. Therefore, CCL knew or should have known that it must provide safe walkways, which includes providing thresholds that comply with these standards. CCL also knew the importance and necessity of training and/or supervising its crew members to inspect, monitor and warn passengers of the elevated height and/or width of bathroom thresholds.

44.     CCL owes a duty as a common carrier to warn its passengers of dangers known to CCL where CCL invites or reasonably expects passengers to go. CCL owes a duty of reasonable care under the circumstances. CCL provides passenger bathrooms including public bathrooms in common areas.  CCL's bathrooms have unreasonably elevated and/or wide thresholds which passengers must cross to use and/or access CCL's bathrooms. CCL expects that passengers, including the Plaintiff, will continuously and repetitively use and walk over CCL's bathroom thresholds to access bathrooms.

45.     CCL documents prior slip and/or trip and falls, stumbling and/or loss of balance on its unreasonably elevated and/or wide thresholds. That documentation includes minutes of shipboard meetings, logs or databases of prior similar incidents of trips and falls, stumbling and/or loss of balance, databases of prior complaints made to guest services and prior inspection and/or testing of thresholds.  CCL also distributes crew member training materials and safety warning messages, including those made through verbal announcements, newsletters, and safety videos. CCL trains its crew members to warn passengers not only of the presence of thresholds but their unreasonably elevated height and/or width, as well as the fact these thresholds are tripping hazards.

46.     Therefore, the cruise line had a long-standing dangerous condition on its ship, had actual and constructive notice of that long-standing dangerous condition, and had the ability to make changes to rectify this condition.  Those changes include but are not limited to providing a railing and/or ramp, providing adequate lighting, adding adequate markings and/or providing visual notice of the presence of the thresholds, the extent of the height and/or width of the thresholds, and providing verbal and/or written notice or visual cues to passengers.

47.     **CCL BREACHED ITS DUTY:** CCL breached its duty to warn the Plaintiff of the dangerous condition in its public bathroom doorway. CCL breached its duties to the Plaintiff by its actions and conduct. CCL, through its crew members, failed to adequately warn passengers of the presence, the extent of height and/or the width of its bathroom thresholds.  CCL failed to warn passengers, including the Plaintiff, of the danger posed by CCL's unreasonably elevated and/or wide thresholds.  CCL failed to place signs, stickers, lights, and other visual notices or written warnings on or near the doorway to indicate the threshold's height and/or width despite knowing the threshold blends in with CCL's walkway and/or is not readily apparent to passengers. CCL and CCL's crew members failed to make audible announcements that CCL's bathroom thresholds are dangerous and can be a tripping hazard. CCL failed to adequately warn passengers, including the Plaintiff, of other similar falls, stumbling, and/or loss of balance occurring on or about the same and/or similar bathroom thresholds like the one on board the *Carnival Legend* and/or CCL's other vessels. CCL also failed to comply with applicable industry standards, statutes, and/or regulations.

48.     **PROXIMATE CAUSE**: CCL's failure to properly warn the Plaintiff of the dangerous threshold proximately caused the Plaintiff's injuries. Had CCL properly warned the Plaintiff of the dangerous condition, the Plaintiff would have known about the hazard and changed her gait to safely walk over the unreasonably elevated and/or wide threshold. The Plaintiff therefore would never have tripped, fallen and been injured on the hard floor surface.

49.   **DAMAGES**: CCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages, including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages, including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law, including but not limited to economic damages, including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future, including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II:**
**NEGLIGENT MAINTENANCE**

50.   The Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1-37.

51.   This is an action for negligence for CCL failing to maintain the ship, including the subject bathroom doorway and/or threshold on board the *Carnival Legend* in a safe condition.

52.   **DUTIES OWED BY CARNIVAL:** CCL owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to

exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

53.     CCL owes a duty as a common carrier to its passengers to maintain the ship, including the subject doorway and/or threshold, in a safe condition and to provide thresholds that are reasonably safe for passengers to utilize. CCL owes a duty of reasonable care under the circumstances.  The circumstances are as follows. CCL provides passenger bathrooms, including public bathrooms in common areas across all of its ships. CCL expects that passengers, including the Plaintiff, will continuously and repetitively use these bathrooms. CCL knows that its passengers will continuously and repetitively walk over CCL's bathroom thresholds to access these bathrooms. CCL's bathrooms have unreasonably elevated and/or wide thresholds, which passengers must cross to use and/or access CCL's bathrooms. CCL knows that passengers may not know and/or be able to detect or appreciate the height or width of these bathroom thresholds. CCL knows that passengers are unfamiliar with these raised thresholds. For these reasons, CCL's duty of care includes maintaining the ship, including the unreasonably high threshold in the bathroom's doorway where the Plaintiff tripped, fell and was injured in a safe condition.

54.     CCL knew or should have known that it must maintain its public bathroom thresholds in a condition such that their presence, height and width are readily apparent to passengers. Alternatively, CCL failed to maintain adequate lighting, distinguishing features and/or otherwise maintain the threshold such that passengers could see and/or appreciate the presence, height and/or width of bathroom thresholds.

55.     CCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, underline subpart 1.1 "safe escape routes shall be provided."); underline subpart 1.2 ("escape routes shall be maintained in a safe condition

clear of obstacles.")  CCL's walkways and doorways are escape routes that CCL knew or should have known it must maintain in a safe condition.

56.     Upon information and belief CCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

57.     The Defendant either had actual knowledge of the dangerous condition and/or had constructive knowledge of the dangerous condition.

58.     CCL knew that the high threshold was there and CCL in fact participated in its design and/or construction.

59.     Upon information or belief, CCL knows from prior trip and fall incidents on unreasonably high thresholds on the *Carnival Legend* and on similar unreasonably high thresholds on other CCL ships that these unreasonably high thresholds cause people to fall. This is an on-going repetitive problem on the *Carnival Legend* and other ships in CCL's fleet that CCL is aware of.

60.     For these reasons, CCL's duty of care included providing the Plaintiff thresholds that are reasonably safe for passengers to walk into and/or out from its public bathrooms.

61.     **<u>CCL BREACHED ITS DUTY:</u>** CCL breached its duty of reasonable care owed to the Plaintiff under the circumstances by failing to perform necessary and reasonable maintenance of its public bathroom threshold. CCL Failed to reasonably train its crew and/or personnel to inspect, maintain and/or repair degraded visual cues and/or markers on the threshold

which indicate its presence, height and/or width. CCL failed to maintain adequate lighting and/or visual cues, which make the presence, height and/or width of the threshold immediately apparent. CCL failed to repair and/or otherwise correct unreasonably height and/or wide thresholds. CCL failed to repair and/or correct degraded markers and/or visual cues alerting passengers as to the presence, height and/or width of thresholds. CCL failed to comply with standards and/or industry standards.

62. Instead of reasonably maintaining the public bathroom threshold Deck 9 in a safe condition, CCL allowed the threshold to degrade, failed to maintain adequate lighting and/or materials used as visual cues, failed to repair and/or modify the threshold such that it was reasonably safe and/or complied with industry standards. These acts and/or omissions caused the Plaintiff to trip, fall and suffer severe and permanent injuries.

63. **PROXIMATE CAUSE:** CCL's negligent maintenance and/or failure to correct the bathroom threshold proximately caused the Plaintiff's injuries. Had CCL properly maintained and/or corrected the bathroom threshold, the Plaintiff would not have been forced to walk over a threshold with an unreasonable height and/or width which was not readily apparent and/or the Plaintiff would have known about the hazard and changed her gait to safely walk over the threshold. The Plaintiff, therefore, would never have tripped and fallen onto the hard floor surface.

64. **DAMAGES:** CCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages, including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages, including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss

of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff

has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages

recoverable under the general maritime law and state law including, but not limited to economic

damages, including medical, psychological, and other related expenses in the past and in the future;

lost income in the past and lost income and earning capacity in the future; non-economic damages in

the past and in the future including pain, suffering, disability, physical impairment, scarring,

disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court

costs, all interest due under the applicable law including interest from the date of the subject incident

under General Maritime Law, and any and all other damages which the Court deems just or

appropriate.

## COUNT III:
## NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS

65.     Plaintiff hereby adopts and re-alleges the allegations in paragraphs 1-37.

66.     This is an action for negligence due to CCL's participation design, construction and

selection of materials of the public bathroom threshold on Deck 9.

67.     **DUTIES OWED BY CARNIVAL:** CCL owes a "duty to exercise reasonable care

for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean

Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to

exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*,

1991 WL 329584 (S.D. Fla. 1991).

68.     CCL owes a duty of reasonable care under the circumstances.  The circumstances

are as follows: CCL owns and/or operates the *Carnival Legend*. The *Carnival Legend* was first put

into service in December of 2002.  CCL has operated and maintained the ship continuously since

2002.  The *Carnival Legend* was built in a shipyard in Finland.  CCL custom designed and custom

built the *Legend* to Carnival's specifications, which includes the subject bathroom on Deck 9. Any refits, modifications and/or changes made to the *Legend* were made in accordance with Carnival's custom designs and selection of changes and modifications of areas and features of the *Legend*.

69.     At all times, CCL had the ultimate control over the design and construction of the *Carnival Legend*. CCL could inspect construction, items and designs and refuse to approve the design, construction and selection of all materials to construct all aspects of the *Legend,* including the thresholds. CCL holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

70.     A cruise line, like CCL, may be found liable for negligent design when the cruise line created, participated in or approved the design of the area of injury. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed. Appx. 837 (11th Cir. 2012); *see also Whelan v. Royal Caribbean Cruises, Ltd.*, 2013 WL 5583970, at *4 (S.D. Fla. Aug. 14, 2013).  CCL maintains shoreside departments that are responsible for creating, participating in and/or approving the design, selection and construction of all aspects and/or features of CCL's ships, including doorways and thresholds. CCL also maintains shoreside departments that create, participate and/or approve changes and modifications to the design, construction and selection of materials when CCL refits or modify its ships, including its doorways and thresholds. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by CCL.  As such, CCL maintained the ultimate control over the design and construction of the *Legend*, its sister ships and its fleet.  Upon information and belief, CCL's contract with the shipyard allowed CCL to make progressive payments as work was completed. CCL's payment scheme allowed CCL the power and right to demand changes and modifications to the design, selection of materials and construction of the ship at any time.

71.     CCL knew or should have known the design, construction and selection of high and or/wide thresholds for its doorways, including the subject bathroom threshold, was unreasonably

dangerous based on years of experience operating ships with similar thresholds. CCL knew or should have known that CCL's design, construction and selection of the dangerous thresholds on its ships, including the subject threshold, fail to comply with industry standards.

72.     At all times material to this action, CCL, as well as its employees, owed the Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to design, construct, and/or select materials for all areas and features of its ships, including bathroom thresholds in a reasonably safe manner and/or in accordance with industry standards. A cruise line, like CCL, may be found liable for negligent design when the cruise line created, participated in or approved the design of the area of injury. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed. Appx. 837 (11th Cir. 2012); *see also Whelan v. Royal Caribbean Cruises, Ltd.*, 2013 WL 5583970, at *4 (S.D. Fla. Aug. 14, 2013).

73.     CCL's duty to design, construct and/or select materials for all areas and features of its vessels, including CCL's bathroom thresholds*,* is part of CCL's duty of reasonable care under the circumstances. CCL had a duty design, select, and/or construct its public bathrooms including bathroom thresholds in a reasonably safe manner and in accordance with industry standards.

74.     CCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Therefore, CCL knew or should have known that it must provide safe walkways, which include doorway thresholds. CCL knew or should have known that it must comply with these standards to prevent trip and falls. CCL also knew the importance and necessity of designing, constructing and/or selecting materials that make bathroom thresholds reasonably

safe for passengers and/or crew.  CCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

75.     Upon information and belief CCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

76.     CCL's duty to design, construct and select materials for all areas and features of its vessels, including the doorways and/or thresholds, including the subject threshold aboard the *Legend*, is part of CCL's duty of reasonable care under the circumstances.  CCL had a duty to design the doorway and threshold in a reasonably safe manner and in accordance with industry standards.  CCL's duty is part of its duty of reasonable care under the circumstances.

77.     **<u>CCL BREACHED ITS DUTY:</u>** CCL breached its duty of care owed to the Plaintiff and was negligent by failing to design, construct, select, approve and/or reject the materials used for CCL bathroom thresholds. CCL failed to design, construct, select, approve, and/or reject materials that complied with industry standards.  The materials CCL selected and/or used to construct its bathroom thresholds were unreasonably dangerous and were not fit for the purpose for which it was intended.  The threshold CCL designed, constructed and/or selected materials for created a tripping hazard to passengers.  Instead of designing, constructing, and/or selecting materials for the threshold in a reasonably safe manner and/or in accordance with industry standards, CCL designed, constructed and/or selected materials which were unreasonably dangerous and caused the Plaintiff to trip, fall and suffer severe and permanent injuries.

78.    **PROXIMATE CAUSE**: CCL's negligent design, construction, and/or select materials proximately caused the Plaintiff's injuries. Had CCL properly designed, constructed, and/or selected the materials of CCL's public bathroom thresholds, the Plaintiff would never have walked over and tripped on the dangerous bathroom threshold. The Plaintiff therefore would never have tripped and fallen onto the hard floor surface.

79.    **DAMAGES**: CCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV:
## NEGLIGENT TRAINING OF PERSONNEL

80.     Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-37.

81.     This is an action for negligence due to CCL's negligent training of shipboard crew members.

82.     **DUTIES OWED BY THE DEFENDANT**.   CCL owes a "duty to exercise reasonable care for the safety of its passengers," including PALESE. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

83.     CCL owes a duty as a common carrier to its passengers to train its crew members to warn of dangers known to CCL where CCL invites or reasonably expects passengers to go.  CCL owes a duty of reasonable care under the circumstances. Those circumstances are that CCL owns and/or manages more than twenty (20) cruise ships, including the *Carnival Legend*. CCL is in the hospitality business.  As such, CCL provides public bathrooms for the comfort of its passengers throughout the ship. The only way for passengers to get in or out of CCL's bathrooms is to cross the bathrooms' unreasonably elevated and/or wide thresholds. CCL knows that passengers will move throughout CCL's common areas, including its public bathrooms, on a repetitive basis throughout the duration of each CCL cruise. Therefore, CCL knew or should have known to make sure there are no tripping hazards in the line of passenger travel.  Despite this knowledge, CCL has chosen to install unreasonably elevated thresholds on all its ships for years.  CCL knows from years of experience that these unreasonably elevated thresholds can cause passengers and crew members to trip and fall, catch their feet and/or lose balance. CCL knows that passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board CCL's cruise ships.  For these reasons, CCL's duty of

care includes warning of dangerous conditions on board the *Carnival Legend*, including the threshold in the doorway of the public bathroom of the Lido Deck where PALESE tripped and fell.

84.     CCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CCL's walkways and doorways are escape routes that CCL knew or should have known must maintain in a safe condition.

85.     CCL trains its shipboard crewmembers to warn passengers of the dangerous conditions on board the *Carnival Legend,* conditions including the unreasonably high thresholds in the doorways of the public bathrooms on the Lido Deck, which may cause passengers to trip and fall. CCL knew or should have known the importance of training its crewmembers to warn passengers of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, which may cause passengers to trip and fall. CCL trains its crewmembers that passengers may not know that thresholds on board the *Carnival Legend,* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, may be dangerous and could cause them to trip and fall. CCL knew or should have known the importance of training its crewmembers that passengers may not know of the dangerous conditions of thresholds on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck. CCL trains its crewmembers to warn passengers of tripping hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from tripping and falling. CCL knew or should have known of the importance of training its crew members to verbally warn passengers of tripping hazards, with warning signs, and/or marking the area or blocking off the area to prevent passengers from tripping and falling.

CCL also distributes crew member training materials; safety warning messages including those made through verbal announcements, newsletters and safety videos. CCL documents dangerous hazards and prior trip and falls in various ways, which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of trip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. However, despite knowing how and the reason why CCL should train its crewmembers, CCL failed to do so.

86.     The Defendant had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

87.     CCL knew about the dangerous condition on board the *Carnival Legend*. CCL custom built the *Carnival Legend* cruise ship in a shipyard in Finland. CCL knew that the unreasonably high thresholds in the bathroom doorways on the Lido Deck were there and CCL in fact participated in its design and/or construction.

88.     CCL also knew or should have known of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck because of prior similar incidents or complaints on the *Carnival Legend* and other ships in CCL's fleet. CCL documents trip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of trip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

89.     CCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe conditions. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment. See,

*e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

90.     CCL's duty to properly train its crew members is part of CCL's duty of reasonable care under the circumstances. This duty requires CCL to properly train its crew members to properly to warn passengers of dangerous conditions on board *Carnival Legend*, including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, which may cause passengers to trip and fall.

91.     CCL should have become aware that it had failed to properly train its crew members, given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Legend*, including the unreasonably high thresholds in the bathroom doorways on the Lido Deck.

92.     **CCL BREACHED ITS DUTY:** CCL breached its duty of care owed to PALESE and was negligent by failing to reasonably train its crewmembers to warn passengers of dangerous conditions on board *Carnival Legend*, including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, which may cause passengers to trip and fall. CCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

93.     **PROXIMATE CAUSE:** CCL's failure to properly train CCL crew members proximately caused PALESE's injuries.  Had CCL properly trained CCL's crew members to warn passengers of dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, which may cause passengers to trip and fall, the crewmember would have warned PALESE of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck. PALESE would have been aware of the dangerous conditions. PALESE therefore would never have tripped and fallen on the unreasonably high thresholds in the bathroom doorway of the Lido Deck.

94.     **DAMAGES:** CCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V:
## NEGLIGENT SUPERVISION OF PERSONNEL

95.     Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-37.

96.     This is an action for negligence due to CCL's negligent supervision of shipboard crewmembers.

97.     **DUTIES OWED BY THE DEFENDANT.**   CCL owes a "duty to exercise reasonable care for the safety of its passengers," including PALESE. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

98.     CCL owes a duty as a common carrier to its passengers to supervise its crew members to ensure CCL's crew members are properly warning passengers of dangers known to CCL where CCL invites or reasonably expects passengers to go.  CCL owes a duty of reasonable care under the circumstances. Those circumstances are that CCL owns and/or manages more than twenty (20) cruise ships, including the *Carnival Legend.* CCL is in the hospitality business.  As such, CCL provides public bathrooms for the comfort of its passengers throughout the ship. The only way for passengers to get in or out of CCL's bathrooms is to cross the bathrooms' unreasonably elevated and/or wide thresholds. CCL knows that passengers will move throughout CCL's common areas including its public bathrooms on a repetitive basis throughout the duration of each CCL cruise. Therefore, CCL knew or should have known to make sure there are no tripping hazards in the line of passenger travel.  Despite this knowledge, CCL has chosen to install unreasonably elevated thresholds on all its ships for years.  CCL knows from years of experience that these unreasonably elevated thresholds can cause passengers and crew members to trip and fall, catch their feet and/or lose balance. CCL knows that passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board CCL's cruise ships  For these reasons, CCL's duty of care includes warning

of dangerous conditions on board the *Carnival Legend*, including the threshold in the doorway of the public bathroom of the Lido Deck where PALESE tripped and fell.

99.     CCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  CCL's walkways and doorways are escape routes that CCL knew or should have known it must maintain in a safe condition.

100.    CCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe conditions. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

101.    The Defendant had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

102.    CCL knew about the dangerous condition on board the *Carnival Legend*. CCL custom built the *Carnival Legend* cruise ship in a shipyard in Finland. CCL knew that the unreasonably high thresholds in the bathroom doorways on the Lido Deck were there and CCL in fact participated in its design and/or construction.

103.    CCL also knew or should have known of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the

Lido Deck because of prior similar incidents or complaints on the *Carnival Legend* and other ships in CCL's fleet. CCL documents trip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of trip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

104.     CCL's duty to properly supervise its crewmembers is part of CCL's duty of reasonable care under the circumstances. This duty requires CCL to properly supervise its crew members and ensure that the crew members are properly warning passengers of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, which may cause passengers to trip and fall.

105.     CCL should have become aware of its failure to reasonably supervise its crewmembers to ensure that the crew members are warning passengers of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck.

106.     Had CCL properly supervised its crew members, it would have become aware that CCL had failed to properly train its crew members to warn passengers of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck.

107.     **CCL BREACHED ITS DUTY:** CCL breached its duty of care owed to PALESE and was negligent by failing to reasonably supervise its crewmembers to ensure that the crew members were warning passengers of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, which may cause passengers to trip and fall.

108.     **PROXIMATE CAUSE:** CCL's failure to properly supervise CCL crew members proximately caused PALESE's injuries.  Had CCL properly supervised CCL's crew members to

warn passengers of the dangerous conditions on board *Carnival Legend* including the unreasonably high thresholds in the bathroom doorways on the Lido Deck, which may cause passengers to trip and fall, the crewmember would have warned PALESE of the dangerous conditions and PALESE would have been aware of the dangerous condition. PALESE, therefore would never have tripped and fallen on the *Carnival Legend*.

109. **DAMAGES:** CCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident

under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:      *s/ Cara L. Hytinen*
        **CARA L. HYTINEN, ESQ.** (FBN: 1002261)
        chytinen@hickeylawfirm.com
        **JOHN H. HICKEY**, **ESQ.** (FBN 305081)
        hickey@hickeylawfirm.com
        federalcourtfilings@hickeylawfirm.com
        **HICKEY LAW FIRM, P.A.**
        1401 Brickell Avenue, Ste. 510
        Miami, Florida 33131-3504
        Telephone: (305) 371-8000
        Facsimile: (305) 371-3542
        *Attorney for the Plaintiff*